THE FIRST PENNSYLVANIA BANKING & TRUST CO., ETC., Plaintiff and Appellant, *v.* SECRETARY OF THE TREASURY OF PUERTO RICO, Defendant and Appellee.

No. 541.   Decided November 30, 1962.

*M. Orraca Torres* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Genoveva R. Carrera, Assistant Solicitor General,* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

During the years 1948 to 1951, both inclusive, a local merchant withheld and paid income tax on commissions earned by taxpayer Harry A. Winterknight, resident of the State of Pennsylvania. The withholding was made by applying the rate of 29 per cent provided in § 12(b)(2) of the Income Tax Act of 1924, 13 L.P.R.A. § 691(b)(2). The 1948 tax was paid on June 13, 1949.

■ On October 17, 1952, public accountant B. López Sariego filed in the name of the taxpayer a claim for refund of the amounts withheld and paid to the public treasury. To that end he used and swore form I-905 (10–23–51) of the Income Tax Bureau. That form was accompanied by form 1010 (11–12–48) signed by the taxpayer which copied verbatim reads as follows:

"You are hereby informed that as of this date B. López Sariego, whose profession is C.P.A., with offices in San Juan, P. R., will bear our representation before you, particularly before the Income Tax Bureau, in the cases pending decision comprising the above-mentioned tax years.

"With reference to those cases, the named agent is authorized (1) to examine each and all of the income returns filed by us; (2) to appear before you and before the officers of the Income Tax Bureau; (3) to attend any administrative hearing; (4) to compromise or agree, in pursuance of the Act and regulations, any matter relating to our tax liability; (5) to accept or reject in our name any administrative ruling or decision, or to adopt such measures as in his opinion may be proper."

Fourteen months later, on December 7, 1953, after the expiration of the four-year term within which to apply for refund of the 1948 tax paid on June 13, 1949, and *"upon termination of the investigation* of the refunds for the years *1948,* 1949, 1950, and 1951," the Bureau advised the taxpayer's agent that since the 1948 claim for refund was not signed by his principal it was necessary to accompany a power of attorney. On December 21 a new claim was filed

for refund signed and sworn by the taxpayer. After five and one half years had elapsed, on May 19, 1959 the Secretary gave notice of his final determination allowing the refund claimed, with the exception of the tax paid for 1948, which was disallowed on the ground that, inasmuch as the claim for refund filed by the taxpayer's agent on October 17, 1952 was ineffective, the claim filed subsequent thereto, signed and sworn by the taxpayer himself, was not filed within the four-year statutory period.[1]

Feeling aggrieved by the disallowance of the refund claimed, The First Pennsylvania Banking & Trust Co., as administrator of the estate of Winterknight—who had died on December 1, 1958—filed a judicial action. The trial court determined that inasmuch as the October 1952 claim was not accompanied by a power of attorney of taxpayer conferring his representation to López Sariego, the same was ineffective and that the new claim for refund had been untimely filed. Consequently, it dismissed the complaint. We issued a writ of review to pass on the propriety of this action.

Article 346 of Regulations No. 1, adopted May 17, 1926 to Implement the Income Tax Act of 1924, provides that:[2]

"Article 346.—*Claims for Refund of Taxes Erroneously Collected.*—Claims by the taxpayer for the refunding of taxes, interest, penalties and additions to tax erroneously or illegally collected shall be made. All facts relied upon in support of the claim should be clearly set forth under oath. In the case of the taxpayer's death, certified copies of the letter of adminis-

---

[1] *Cf.* § 322(*b*) of the Income Tax Act of 1954, 13 L.P.R.A. § 3322(*b*), which in general terms provides a period of four years counted as of the filing of the return, or of three years as of the date payment is tendered, whichever expires later, for the filing of a claim for refund.

[2] In connection with similar provisions of the Income Tax Act of 1954, see subds. (c) and (d) of art. 322–3 of the Regulations of 1957, 13 R.&R.P.R. § 3322–3(c) and (d), especially the latter which provides that "A claim may be executed by an agent of the person assessed, but in such case a power of attorney must accompany the claim."

For similar federal provisions, see 26 C.F.R. § 301.6402–2(e) (1961); 26 C.F.R. § 29.322–3(c) (1949); 26 C.F.R. § 19.322–3 (1940 Supp.).

tration or letters testamentary or other similar evidence must be annexed to the claim to show the authority of the administrator or executor. The affidavit may be made by the agent of the person assessed, but in such case a power of attorney must accompany the claim."

■■ Assuming that this regulatory provision was in force in 1952,[3] when the refund was claimed, we can not agree with the trial court that the claim for refund filed by accountant López Sariego, accompanied by form 1010 signed by taxpayer himself, was not effective for the purpose of interrupting the four-year prescriptive period. Irrespective of whether in our opinion this is a mere formal requirement which should not obstruct the administration of justice to which taxpayer is entitled, the form in question complies substantially with the regulatory purposes which are none other than to prevent claims by unauthorized persons. The letter signed by taxpayer and his agent clearly delegates to the latter the former's representation to handle pending tax matters, among which was the 1948 claim for refund.

■ Although this situation is not identical, the same result was reached by the attorney of the Federal Internal Revenue Bureau in the opinion in C.B. 1926-2, p. 97. It was said that the accidental destruction of a power of attorney did not terminate the principal-agent relationship, and that under such circumstances a claim timely filed by an agent unaccompanied by a power of attorney is defective as to *form only*. It was added that any formal defect could be remedied by the taxpayer subsequently filing a formal

---

[3] Article 346 *supra* was adopted in order to implement § 64 of the Income Tax Act of 1924, which was expressly repealed by § 2 of Act No. 230 of May 10, 1949 (Sess. Laws, p. 706 at 717). Since that date and until October 5, 1954 (see Act No. 5 of October 5, 1954 (Sp. Sess. Laws, p. 42)), in so far as income tax is concerned, there governed Act No. 232 (Sess. Laws, p. 720), which established a uniform procedure for the credit or reimbursement of taxes. The provisions of § 322 of the Income Tax Act of 1954, 13 L.P.R.A. § 3322, and the regulatory articles mentioned in footnote 2 govern as of October 5, 1954.

claim signed by him personally, even though it was filed after the expiration of the statutory period granted therefor. And that was precisely what happened in the instant case. If the authorization contained in form 1010 had been insufficient, which was not, any formal defect was subsequently cured upon the taxpayer subsequently filing the sworn claim for refund. *Cf. Rodríguez v. Secretary of Treasury of Puerto Rico,* 276 F.2d 344, 348 (1960).

In his work on Federal Income Taxation, vol. 10, § 58.08, MERTENS sums up the question in these words:

"Refund claims may be filed by an agent, where accompanied by a power of attorney.[4] A general power of attorney to act in all business matters has been held sufficient to sustain a refund claim filed by an agent. If a power of attorney does not accompany the claim, the claim is defective in form only and may be remedied by subsequent action. Where suit is brought by an agent it must be clear that he is acting as agent and not individually."

■ Recently, in *Lluberas v. Secretary of the Treasury, ante,* p. 171, we adopted a very liberal position for the benefit of the Secretary of the Treasury in order to uphold the power of the agent of a common venture to sign waivers of prescriptive periods for the imposition and assessment of deficiencies. We stated that a criterion of strict interpretation of the general agency principles was not necessary. In the instant case, in which we are confronting the reverse of the medal, a different position is not warranted.

The judgment rendered by the Superior Court, San Juan Part, on June 5, 1961 will be reversed and the complaint granted with the proper pronouncements.

---

[4] In the Spanish version "power of attorney" was translated *"autorización"* because in our opinion, it represents more fully the concept contemplated in the Federal Regulations.